UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEE W. MURBERG,

      Plaintiff,

v.                                                            CASE No. 8:10-CV-1012-T-26TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits and the partial denial of his claim for supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision should be affirmed insofar as the plaintiff's challenges are concerned.  However, the Commissioner has noted a typographical error in his decision so that the decision should be modified

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

to state that the plaintiff's award of supplemental security income payments should have commenced a year earlier.

I.

The plaintiff, who was fifty-one years old at the time of the most recent administrative hearing and who has a high school education, has been employed as a stocker, salesperson, laborer, fork-lift operator, trainer, manager, and landscaper (Tr. 103, 247, 970-74). He filed claims for Social Security disability benefits and supplemental security income payments, alleging he became disabled due to "[s]pinal injury, bad knees, and [an] ulcer" (Tr. 70). His claims were denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge pointed out that the plaintiff's insured status for disability benefits had expired on December 31, 2005 (Tr. 22). He concluded that, through the date of the February 2007 decision, the plaintiff was not disabled (Tr. 33). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

Thereafter, the plaintiff sought review of the law judge's decision in this court. In a Report and Recommendation, United States

Magistrate Judge James R. Klindt recommended that the law judge's decision be reversed and remanded, finding that the law judge did not adequately evaluate a treating physician's opinion, failed to provide adequate reasons for his credibility determination, and did not evaluate the side effects of medication (Tr. 735). United States District Judge Elizabeth A. Kovachevich adopted his Report and Recommendation, and reversed and remanded the law judge's decision (Case No. 8:08-CV-936-T-17JRK, Doc. 29). Judgment was entered accordingly (Doc. 30).

On remand, the same law judge subsequently conducted another hearing (Tr. 965-96). Following that hearing, the law judge determined that the plaintiff was not disabled for disability benefits as of his date last insured of December 31, 2005. However, the law judge determined, with respect to the claim for supplemental security income, that the plaintiff became disabled under the medical-vocational guidelines upon reaching the age of fifty on June 16, 2009, due to his new status as "an individual closely approaching advanced age" (Tr. 697).[2]

---

[2]As the Commissioner correctly points out, the plaintiff was born on June 16, 1958, making him fifty years old on June 16, 2008.

-3-

The law judge found that the plaintiff had severe impairments of "degenerative disc disease of the lumbar spine; degenerative joint disease of the knees; and, morbid obesity" (id.). The law judge concluded that, prior to June 16, 2009, the plaintiff had the residual functional capacity to perform sedentary work except that he can only occasionally climb, balance, stoop, kneel, crouch, crawl, and use bilateral upper extremities for overhead reaching (id.). Additionally, the law judge found that the plaintiff should avoid climbing of ladders, ropes, or scaffolds (id.). The law judge also determined that the plaintiff required a sit or stand option (id.).

The law judge concluded that these restrictions prevented the plaintiff from performing past work (id.). Based upon the testimony of a vocational expert, the law judge found that, prior to June 16, 2009, the plaintiff could perform other jobs that were available in significant numbers in the national economy, such as surveillance system monitor and food and beverage order clerk (Tr. 696). Accordingly, the law judge concluded that the plaintiff did not become disabled until June 16, 2009, and therefore, was entitled only to supplemental security income payments as of that date. The

-4-

Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, also, the plaintiff must show that he became disabled before his insured status expired on December 31, 2005, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The law judge, on remand, entered a partially favorable decision, finding the plaintiff disabled as of June 16, 2009, so that the plaintiff was entitled only to supplemental security income payments as of that date. The law judge also found that, prior to June 16, 2009, the plaintiff was not totally disabled, although he had a combination of severe impairments stemming from his back problems, knee problems, and obesity that restricted him to a limited range of sedentary work with a sit/stand option (Tr. 685). The plaintiff challenges the adverse portion of the law judge's decision on three grounds. None of the plaintiff's contentions warrants reversal.

A.  The plaintiff first argues that the law judge improperly discounted the opinion of Dr. Ashraf F. Hanna, a treating physician (Doc. 13, pp. 6-12). Dr. Hanna, an anesthesiologist and pain management specialist, but not an orthopedic surgeon, began treating the plaintiff on January 24, 2001, for pain associated with his various ailments (Tr. 530). On April 5, 2006, Dr. Hanna partially responded to questions in a form provided by the plaintiff entitled Treating/Examining Source Statement of Physical Capacity (Tr. 447). Dr. Hanna indicated that the plaintiff was able to lift and carry twenty pounds frequently and twenty pounds occasionally (id.).  The physician further opined that the plaintiff could stand and walk for a total of thirty minutes in an eight-hour workday and that he could sit for a total of thirty minutes in an eight-hour workday (id.). Finally, Dr. Hanna opined that the plaintiff had limitations in pushing and pulling, could balance frequently, but could never climb, stoop, crouch, kneel, or crawl (id.).[3]

Opinions of treating physicians are entitled to substantial or considerable weight unless there is good cause for not doing so. Phillips v.

---

[3] It is the opinions in the treating source statement that are the subject of the plaintiff's challenge. There are other opinions in the record from Dr. Hanna, but the plaintiff does not raise any challenge as to them. In light of the requirements of the scheduling Order, any such challenges are properly deemed to be waived (Doc. 10, p. 2).

Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge assigned the treating source statement little weight because Dr. Hanna's opinions were not supported by the record and he did not "provide specific references to objective or clinical signs and findings" (Tr. 694).  The law judge was correct in concluding that Dr. Hanna did not explain in a meaningful way the opinion that the plaintiff was practically incapacitated.  Thus, while each question propounded was accompanied with an instruction and a space for the doctor to explain the medical findings that support the assessment, Dr. Hanna merely stated, "See office notes" (Tr. 447).

Significantly, the treating source statement displayed the warning that "IT IS IMPORTANT THAT YOU RELATE PARTICULAR MEDICAL FINDINGS TO ANY ASSESSED REDUCTION IN CAPACITY; THE USEFULNESS OF YOUR ASSESSMENT DEPENDS ON THE EXTENT TO WHICH YOU DO THIS" (id.)(emphasis in original).  Dr. Hanna did not

comply with this instruction. Consequently, his opinions were simply conclusory. The conclusory nature of his opinions is enough, by itself, to justify the law judge to discount them. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007)(unpub. dec.).

The plaintiff contends that Dr. Hanna should not be "required to recite the details of his lengthy treatment record for his opinion to be considered valid" (Doc. 13, p. 10). However, just because Dr. Hanna is a physician does not mean that the law judge is obligated to accept his unexplained opinion. See 20 C.F.R. 404.1527(d)(3), 416.927(d)(3). Particularly where, as here, a medical opinion expresses extreme functional limitations, the failure to provide cogent reasons for the limitations carries a strong risk that it will be rejected as unpersuasive. Thus, the law judge could reasonably discount Dr. Hanna's extreme opinions because they were unexplained.

Furthermore, the law judge supported his discounting of Dr. Hanna's opinions on the ground that they were not supported by the record. That determination is also reasonable.

Because the law judge limited the plaintiff to sedentary work with a sit/stand option, the most important opinion by Dr. Hanna concerned his assessment of the plaintiff's ability to sit. Dr. Hanna opined not just that the plaintiff was limited to sitting for thirty minutes at a time, but that he could not sit for more than a total of thirty minutes in an eight-hour workday. Not even the plaintiff or his lawyer agrees with that opinion. The plaintiff did not testify that he was limited to sitting for thirty minutes in an eight-hour workday. Rather, he testified that he "sit[s] most of the day" (Tr. 978). Moreover, at the administrative hearing, plaintiff's lawyer argued to the law judge that the plaintiff "really can't sit for more than about four hours out of a day" (Tr. 990); there was no contention that the plaintiff could only sit for thirty minutes during the day.

Additionally, the plaintiff's testimony regarding his daily activities conflicts with Dr. Hanna's assessment that the plaintiff is unable to sit for more than thirty minutes a day or stand and walk for more than thirty minutes a day. Thus, he stated that he is able to go to church twice a month (Tr. 989), drives twice a week (Tr. 968), shops (Tr. 978), takes care of

personal needs (Tr. 990), and cooks (Tr. 989-90). These activities are inconsistent with the opinion that the plaintiff is virtually incapacitated.

The plaintiff argues that one of the grounds the law judge inappropriately relied upon in rejecting Dr. Hanna's opinion was an opinion by Dr. Phillip W. Christ that the plaintiff would be able to perform sedentary work (Doc. 13, p. 8). Dr. Christ, an orthopedic surgeon who operated on the plaintiff's knees, reported on February 27, 2001, that the plaintiff has "the same long term limitations with sedentary work only with limited walking and standing and he will not tolerate stairs or kneeling" (Tr. 309).

The law judge did not expressly indicate that Dr. Christ's conclusion was a basis for discounting Dr. Hanna's opinion (see Tr. 694). However, Dr. Christ's statement is evidence in the record that supports the law judge's determination to give little weight to Dr. Hanna's opinion.

The plaintiff argues that there is no indication that Dr. Christ used the word "sedentary" within the meaning of Social Security law. Maybe he did and maybe he didn't. But Dr. Christ (unlike Dr. Hanna) is an orthopedic surgeon and he certainly understood the meaning of sedentary work. His opinion that the plaintiff could perform sedentary work clearly

contradicts Dr. Hanna's opinion that the plaintiff could only sit for a total of thirty minutes in an eight-hour day.

The plaintiff also asserts that Dr. Christ's opinion should be disregarded because it was rendered early in the course of the plaintiff's treatment and because Dr. Christ's treatment dealt with the plaintiff's knees. These assertions are unpersuasive.

The plaintiff's knee and back impairments stemmed from work-related injuries in May 1999 and April 2000. Consequently, Dr. Christ's statement on February 27, 2001, came a number of months after the injuries. Moreover, in December 2002, about twenty-two months later, Dr. Christ stated that the plaintiff "is still limited for no excessive walking or standing, and no stairs or ladder climbing" (Tr. 295; see also Tr. 380). These limitations are also inconsistent with an opinion that the plaintiff could only sit for thirty minutes during an eight-hour day.

Furthermore, while Dr. Christ operated on the plaintiff's knees, he was also aware of his back problem. Thus, the plaintiff had gone to see Dr. Christ about his back (Tr. 310). Moreover, Dr. Christ recognized that the plaintiff subsequently was being treated at the Florida Spine Institute for his

back impairment (Tr. 309). Therefore, there is no reason to think that, when Dr. Christ, an orthopedic surgeon, was setting forth functional limitations, he was considering only the plaintiff's knee problems, and was ignoring his back condition.

Consequently, it was reasonable for the law judge to agree with Dr. Christ that the plaintiff "would be limited to sedentary exertion due to his knee impairments as well as his pain and back disorder" (Tr. 694). Notably, the law judge did not simply accept Dr. Christ's assessment since he added a sit/stand option and other limitations to the restriction to sedentary work.

Moreover, the law judge's agreement with Dr. Christ's limitation to sedentary work followed the law judge's discussion of the opinions of two non-examining reviewing physicians who had each opined that the plaintiff could perform light work (id.). The law judge gave little weight to those opinions and agreed with Dr. Christ that the plaintiff was restricted to sedentary work. In other words, the law judge's point in relation to Dr. Christ's opinion was that the plaintiff was restricted to sedentary work contrary to the opinions of the reviewing doctors. However, while Dr. Christ's opinions support the law judge's determination that the plaintiff

could not perform light work, they also support the finding that the plaintiff was not virtually incapacitated by virtue of an inability to sit for more than thirty minutes in an eight-hour workday, but rather could perform sedentary work.

The plaintiff also argues that "[t]here is ample evidence showing that [Dr. Hanna's opinion] is true" (Doc. 13, p. 10). That contention fails for two reasons.

In the first place, there is no evidence in the record supporting the critical opinion that the plaintiff could not sit for more than thirty minutes in an eight-hour day. In addition, it is not sufficient for the plaintiff to show that there is evidence supporting Dr. Hanna's opinion; rather, the evidence must compel a finding that Dr. Hanna's opinion should be accepted. <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027.  There is certainly no evidence compelling a finding that Dr. Hanna was correct to opine that the plaintiff could not sit for more than thirty minutes in an eight-hour day.

For these reasons, the law judge did not err in discounting Dr. Hanna's opinions.

B.  The plaintiff next challenges the law judge's credibility determination.  That contention does not support reversal.

The Eleventh Circuit has established a standard for evaluating complaints of pain.  As the court of appeals explained in <u>Landry</u> v. <u>Heckler</u>, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

If the law judge determines that, under this test, the complaints of pain are not supported by the objectively determined medical condition, then the subjective complaints cannot be the basis for a finding of disability and the law judge need not assess the credibility of the complaints of pain. He must, however, provide an adequate explanation for the determination in order to permit, upon judicial review, an assessment whether the proper standard was applied and whether the finding is supported by substantial evidence.  <u>See</u>, <u>e.g.</u>, <u>Walker</u> v. <u>Bowen</u>, 826 F.2d 996, 1004 (11th Cir. 1987); <u>Johns</u> v. <u>Bowen</u>, 821 F.2d 551, 556 (11th Cir. 1987).

If, on the other hand, the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985). In other words, this credibility finding must be adequately explained. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

In his first decision, the law judge did not articulate the principles of the Eleventh Circuit pain standard (see Tr. 29). Moreover, he determined at the first step of that test that the plaintiff's objectively determined medical condition could not have been reasonably expected to give rise to his claimed pain (see Tr. 727). Judge Kovachevich directed that on remand the law judge "[r]econsider whether Plaintiff's objectively determined medical condition could reasonably be expected to produce the symptoms he alleges" (Tr. 740).

The law judge did as he was directed. To begin with, he articulated the principles of the pain standard (Tr. 693). Further, he found

-17-

"that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (id.).

The plaintiff argues that "[t]he ALJ, in his new Decision, simply reiterated his previous statement that Mr. Murberg's medically determinable impairments could not reasonably be expected to give rise to his claimed pain" (Doc. 13, p. 14; see also id., p. 15). As just seen, that argument is plainly wrong. The law judge not only reconsidered the first step of the pain standard, but came to a different conclusion.

Having determined that the plaintiff met the first part of the pain test, the law judge, consistent with the Social Security Regulations (20 C.F.R. 404.1529, 416.929) and the Eleventh Circuit pain standard, proceeded to assess the credibility of the plaintiff's allegations. In this respect, the law judge concluded that "the claimant statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" (Tr. 693). He then explained that conclusion further (Tr. 693-94):

> The claimant's subjective complaints and symptoms, including his allegations of pain and limitations, as well as depression, have been carefully compared to the other evidence. The

claimant's testimony and other reports show that he lives a sedentary lifestyle, which is consistent with the medical evidence. The claimant is able to live alone. He prepares his own meals and does his own laundry. The claimant reported in Exhibit 6E he is able to clean, vacuum, prepare simple meals, goes shopping, attends church on most Sundays. The claimant testified during the previous hearing that he could lift 10 pounds and during the current hearing he testified he could lift up to 20 pounds. It is noted that Dr. Hanna opined the claimant could lift up to 20 pounds. His medications have shown improvement in his pain allowing him to be more functional. There [sic] reported side effects were minimal. Activities and reports such as these are inconsistent with his allegations of incapacitating limitations or pain. This is not to minimize the medical impairments demonstrated in the record. The claimant does have impairments that limit his activities with heavy lifting and prolonged standing and walking. However, the clinical findings resulting from these impairments do not appear to be of producing pain or limitations of incapacitating proportions. Accordingly, the undersigned finds that the claimant's allegations and subjective symptoms are beyond what could be expected considering the objective laboratory and clinical findings, as well as his reported activities of daily living.

Significantly, the law judge did not totally reject the plaintiff's allegations of pain. To the contrary, the law judge found that the plaintiff had severe back and knee impairments that cause him pain and limit him to a

reduced range of sedentary work with a sit/stand option. He concluded further that the plaintiff's impairments rendered him disabled upon turning fifty years of age. Thus, the law judge discounted the plaintiff's subjective complaints only to the extent that the plaintiff was alleging that he was totally incapacitated while he was in his forties.

Furthermore, the law judge did not discount testimony regarding the plaintiff's ability to sit because the plaintiff did not provide any specific testimony expressing limitations on his ability to sit. Although both the law judge and the plaintiff's attorney asked the plaintiff how long he could sit, he never directly answered those questions (Tr. 981, 982). He did state, "I'll sit as long as you make me sit," adding that it's uncomfortable, but "my life's uncomfortable so I'm used to the pain" (Tr. 982). He also said, in a non-responsive answer to a question about lifting, "I sit most of the day" (Tr. 978). Accordingly, while the plaintiff's attorney argued that the plaintiff "really can't sit for more than about four hours out of a day" (Tr. 990), there was no testimony from the plaintiff that supported that argument. Consequently, on the critical issue of the plaintiff's ability to sit, there was no

testimony from the plaintiff that was presented to the law judge for a credibility assessment.

In all events, to the extent that the plaintiff's testimony raised a question of credibility, the law judge explained that he was rejecting the plaintiff's allegations of incapacitating pain and limitations on the grounds that they were not supported by clinical findings, they were contradicted by activities of daily living, and the pain was ameliorated by the beneficial effects of medication (Tr. 693-94). This explanation is adequate to discount the plaintiff's allegations of disabling pain. Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 695 (11th Cir. 2006)(unpub. dec.).

The plaintiff argues that his daily activities "are not necessarily indicative of an ability to work" (Doc. 13, p. 14). To the extent the plaintiff suggests that activities of daily living are inappropriate for consideration, that suggestion is incorrect. The law judge is clearly authorized to consider those activities in making his disability determination. See, e.g., Carter v. Commissioner of Social Security, 2011 WL 292255 at *2 (11th Cir. 2011) (unpub. dec.); Salazar v. Commissioner of Social Security, 2010 WL 1292258

at *3 (11ᵗʰ Cir. 2010)(unpub. dec.). Indeed, the regulations specify that activities of daily living will be taken into account in making a credibility determination. 20 C.F.R. 404.1529(c)(3)(i), 416.929(c)(3)(i).

In addition to the daily activities cited by the law judge, there are other items in the record that support the law judge's credibility determination. The plaintiff moved to Inverness, Florida, in 2006, because Largo, Florida, "was too packed" (Tr. 604, 625). Seemingly, his new home in Inverness made for a much longer commute to his frequent doctor visits at the Florida Spine Institute, which is located in Clearwater. The plaintiff also traveled to New Jersey in 2004 and to New York in December 2009 for a relative's funeral (Tr. 402, 939).

Notably, the law judge did not conclude that the plaintiff's daily activities demonstrated that he could perform the full range of employment, or even a substantial number of different types of jobs in the economy. Rather, he found merely that the plaintiff's activities showed that he was not totally incapacitated and could perform a restricted range of sedentary work with a sit/stand option. This finding was reasonable and therefore entitled to deference in light of the law judge's role as credibility fact-finder.

The plaintiff, citing the various treatments he has received, argues that his history of complaints and attempts to obtain relief support his pain allegations (Doc. 13, p. 15). The law judge considered the plaintiff's history at length, but concluded nevertheless that the plaintiff was not totally incapacitated. Significantly, the plaintiff cannot establish that he is disabled simply by showing that he has impairments and that he received treatment for those impairments. Robinson v. Astrue, 365 Fed. Appx. 993, 995 (11th Cir. 2010)(unpub. dec.). Rather, he must show that he has functional limitations from his impairments. Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(unpub. dec.). Accordingly, the plaintiff's recitation of medical findings and treatments is not sufficient to demonstrate a functional capacity more limited than found by the law judge.

Moreover, it is not enough for the plaintiff to contend that there is evidence in the record that supports his pain allegation. As previously explained, the plaintiff must demonstrate that the evidence compels a credibility finding in his favor. Adefemi v. Ashcroft, supra. The plaintiff has not made such a showing.

The law judge's credibility determination is corroborated by inconsistencies in the plaintiff's testimony at the two hearings. Thus, the plaintiff seemed to state greater limitations at the first hearing than he expressed at the second hearing. For example, at the first hearing in 2007, the plaintiff testified, "I don't walk anymore" (Tr. 663). However, he testified at the second hearing in 2010 that he does walk when he goes to the store (Tr. 978), but that his ability to walk was better five years earlier (Tr. 979-80), seemingly contradicting his prior testimony.

In sum, the law judge did not rely on just the plaintiff's daily activities in discounting his testimony. Overall, the reasons given by the law judge are adequate and supported by substantial evidence. This court is therefore not authorized to overturn the law judge's credibility determination. Arnold v. Heckler, 732 F.2d 881, 883-84 (11th Cir. 1984).

C. In a related contention, the plaintiff argues that the law judge failed to consider the side effects of plaintiff's medications (Doc. 13, p. 18). "In determining whether a claimant's impairments limit h[is] ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms."

-24-

Walker v. Commissioner of Social Security, 404 Fed. Appx. 362, 366 (11th Cir. 2010); 20 C.F.R. 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

The plaintiff asserts that the law judge's findings with regard to side effects of medications were exactly the same as he made in the first decision (Doc. 13, p. 18). That is not correct. In his first decision, the law judge found that "[t]here are no reported side effects" (Tr. 30). Judge Kovachevich ordered the law judge, upon remand, to "determine whether the side effects of his medications reduce his residual functional capacity" (Tr. 735; see Tr. 730).

During the hearing on remand, the law judge elicited testimony from the plaintiff regarding the side effects of his medication. The plaintiff stated that his medications cause blurry vision, fatigue, and concentration problems (Tr. 983, 989). Accordingly, the law judge recognized that "[t]here were some reported medication side effects such as drowsiness, blurred vision, and nausea" (Tr. 691). However, the law judge expressly found that the "reported side effects were minimal" (Tr. 693). The law judge pointed out that the clinical evidence reflected that the plaintiff was "more functional with his medications" and that they "improved his pain when doing his activities

of daily living" (Tr. 690, 691). Accordingly, in making his credibility determination, the law judge considered that the plaintiff's "medications have shown improvement in his pain allowing him to be more functional" and that the "reported side effects were minimal" (Tr. 693). The findings that the side effects of medication were minimal and that the medications improved the plaintiff's performance of daily activities are supported by substantial evidence.

In connection with this issue, the plaintiff does not make any challenge to the law judge's finding the plaintiff's ability to perform daily activities improved with his medications. That finding, moreover, is supported by comments to that effect by Dr. Hanna, the plaintiff's pain management doctor, which were referenced by the law judge, and by Dr. Hanna's regular assessment that the plaintiff with the medication "has improved 50 percent" (see Tr. 855-98).

Furthermore, while the plaintiff purports to challenge the law judge's handling of the side effects of medication, that challenge is off the mark. As indicated, the law judge expressly found that the "reported side effects were minimal" (Tr. 693). The plaintiff does not acknowledge that

finding. Rather, he states that the only evaluation of medication by the administrative law judge was the statement that medications were helpful and allowed him to be more functional with his activities of daily living (Doc. 13. p. 18). Since the plaintiff did not recognize that the law judge had found that the "reported side effects were minimal," he made no attempt to show that the finding was not supported by substantial evidence. This deficiency renders this challenge unavailing (see Doc. 10, p. 2).

Regardless, the finding that the reported side effects were minimal is clearly supported by substantial evidence. The notes from Dr. Hanna. the pain management doctor, generally mentioned side effects in two places: near the beginning of the notes and near the end. Much of the time Dr. Hanna noted that "the patient has had no side effects from medication(s)" (see, e.g. Tr. 555, 559, 875, 877). On occasion, Dr. Hanna noted reports of side effects of drowsiness, blurred vision, and nausea (Tr. 887, 889, 891), drowsiness and nausea (Tr. 894). nausea (Tr. 898), or acid reflux (Tr. 855). However, on all those occasions, Dr. Hanna stated near the end of his notes that "[t]he patient does not appear to be having serious side effects" (see. e.g.. Tr. 888. 890, 892). Thus, many times there were no reported side effects at

all, and, even when there were reported side effects, Dr. Hanna thought that those side effects were not serious. Consequently, the law judge could reasonably conclude that reported side effects were minimal.

IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence. I, therefore, recommend that the challenged portion of the decision be affirmed.

However, the law judge's decision should be modified to provide for a disability onset date of June 16, 2008. As indicated, the law judge concluded that the plaintiff became disabled under the medical-vocational guidelines when he reached the age of fifty on June 16, 2009. The Commissioner points out that this was a typographical error because the plaintiff reached age fifty on June 16, 2008 (Doc. 17, n. 2). The plaintiff did not mention this mistake and thus it was not a subject of the appeal. Nevertheless, the Social Security Act authorizes the court on judicial review to "modify[]" the decision of the Commissioner without remanding the case for a rehearing. 42 U.S.C. 405(g). Accordingly, it seems appropriate and fair

to modify the Commissioner's decision to reflect a disability onset date of June 16, 2008.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY 3_, 2011

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).